This afternoon is People of the State of Illinois v. Ronald Pettis, for Diapoli, Mr. Sardinus, correct pronunciation, and for Diapoli, Ms. Vang. You may proceed. May it please the Court, Your Honors, Counsel, good afternoon. My name is Benjamin Sardinus, representing the 4th District State Appellate Prosecutor's Office in this case. Trial courts are required to apply the rules of evidence and the standards governing those rules to questions of admissibility. When a trial court employs the wrong legal standard in evaluating such a question of admissibility, it commits quintessential abuse of discretion. Here, the trial court below did exactly that, committing an abuse of discretion in suppressing the State's exhibits T, the fingerprint card in question, and S, the envelope that the fingerprint card was contained in. This Court should exercise its rightful jurisdiction in this case and reverse the lower court's substantive suppression of these exhibits to ensure uniformity in the foundational requirements for the admitting of evidence in Illinois courts. First, this Court is vested with the jurisdiction to address the State's appeal. Rule 604A1 states that in criminal cases, the State may only appeal from an order that has a substantive effect of suppressing evidence. There is no substantive distinction between evidence that is excluded and evidence that is suppressed for the purposes of this Court's analysis, and that's the Drum case. This trial court here has effectively suppressed the State's exhibits T and S by failing to admit them in this case. Much like in Drum, the effect of the trial court's ruling is to effectively prevent the State from presenting any evidence related to the State's two exhibits in this case. In Drum specifically, the State filed a motion to admit two witnesses' prior testimony because of future unavailability during the trial, and the trial court denied this motion. The Supreme Court ruled that it found it to be a substantive suppression because it effectively rendered the State unable to present that evidence at trial. So you're suggesting in this case, there is no other basis for the State to have presented its evidence or its theory of the case? Absolutely, Your Honor. There is no way, well, that the trial court's actions in this case prevented from bringing any kind of evidence relating to these two exhibits, yes, Your Honor. Well, there was a period of time during which the trial court granted the State a recess, so you think there was nothing the State could have done at that point to help the court make the connections that needed to be made so that this evidence could be, either this evidence could be admitted or new evidence could be secured? Your Honor, I think that based on the record, yes, the answer is yes to that question. I think you can see that on a couple of different fronts. The first is that the State was well aware based on the record that there were going to be issues regarding the chain of custody simply because on day one of the trial, the trial court judge specifically brought it to the attention of the State that they did have concerns. That's at page 104 and 110 of the record. There's a sidebar between the State, the trial court, and the defense attorney where the trial court makes it known that they have issues on the first day of trial with the chain of custody related to these two pieces of evidence. And if the State had witnesses that they wanted to call, they would have called those witnesses to address those concerns. Did the State tell the trial court that the witnesses that the trial court thought should be testifying to complete the chain were not available? Your Honor, I don't think that was made exactly clear on the record in terms of being told to the trial judge. Does that matter? I don't think it does, Your Honor. If the court looks to the Drum case and the other cases in the record that were argued, KEF and Truett, those cases elucidate the principle that the issue at hand is that when the State has an opportunity or a way to bring extra witnesses or reorder its case so that evidence can be included, that is not suppressing evidence. But that's not present in this case. What about that evidence clerk? Wasn't there a female evidence clerk? There was, Your Honor. Was she called to testify? No, Your Honor, but I think that... They might make an effort to find out who it was that changed the... I think you figured at some point it was disclosed that maybe you knew who changed the officer's badge number. Yes, Your Honor. There was testimony for that person. For that, but not for the Social Security. No, Your Honor. So somebody altered that, and I understand one approach would be that's a scrivener's error that can be corrected at any time. But the flip side of that is, no, wait a minute, that's a pretty important identifier. But at any rate, we don't know who that was. No, Your Honor, we don't know who that was based on the record. But I don't think that that matters for a couple of reasons. The first is, and the defendant posits to witnesses that they claim could have been brought to address these issues. And I think if the court looks over the record closely, you'll see that neither of those proposed witnesses could have addressed the issues the court had. The first proposed witness was the duty sergeant on call the night that the card was delivered to the sergeant's desk to be brought to records. The testimony that Officer Behrens gave was that the common practice at the precinct was that these cards were all taken in a day for whoever was arrested on that day and then brought to that officer's desk and then put in a folder, basically, and then moved to the records room. So the duty sergeant on call that night would have had no personal knowledge of that card versus 100 different other cards that had been taken that day and wouldn't have had personal knowledge about the card in particular because he didn't take that card because he wasn't Officer Behrens. Officer Behrens testified in this case. But if Officer Behrens testified, he put it in that folder, and the individual responsible for that folder said there were no extraneous cards, the folder was secure, it was on the right place on my desk, I picked that up and transported it. Would that have helped? I don't think it would have addressed the trial court's concerns in this case, which were that the card was sitting in an office for two months before it was retrieved by the evidence. How about that? Well, Your Honor, I think that goes to the merits. Or the weight? Yeah, to the weight of the card. But I think for jurisdictional purposes, again, calling that officer to testify wouldn't have addressed the period that the court was concerned. How long did the trial take? I believe it was a two-day trial, Your Honor. The trial judge did not say the fingerprint found on, was it a window sill? Yes, Your Honor. That could not be used. She didn't say that. I'm sorry, who are you referring to? The trial court did not exclude the fingerprint from the window sill. No, Your Honor, they didn't exclude that. If everybody knew at the beginning of the trial that there were problems, why didn't somebody just fingerprint the defendant and do a comparison as quickly as possible? Or, if it couldn't be done ASAP, ask for a brief continuance? Your Honor, I think that I have two responses to that. The first being that I don't think that that would be related to the question on appeal about whether or not the card was being brought. I think that the State has a right to bring the evidence that it creates, and if it meets the test of admissibility, that it can bring those pieces of evidence to trial. And it's our position that they did everything necessary to do that. I think, secondly, to address the more practical question that you're asking, which is why they didn't do that, I think that when you review the record, it seems, and the judge's conduct in this case, that the State believed that it had enough evidence and enough testimony from Officer Behrens and from the evidence custodian to establish chain of custody. And it kept assuring the trial court that everything was going to be connected up. Exactly, and I think that's because... And the trial court ends up saying, in so many words, you've been leading me down the path and you haven't connected it up. Yes, Your Honor, but I think that litigants are entitled to have judges apply the correct standards that govern their cases and are allowed to plan their cases out by having the order of operations go the way that the law intends. But the reason that we're appealing is because the trial judge also, besides ruling against you, also has essentially determined she didn't suppress any evidence. I'm sorry, I misunderstood. She doesn't think you should be appealed. Absolutely, Your Honor, but again, I don't... Because of the jurisdiction. Basically, it didn't impair your prosecution in the way that one ordinarily thinks a suppression of evidence, which sometimes is a confession, occurs. Yes, Your Honor, but I think this Court's precedent and the Supreme Court's precedent both point to that not being something... Obviously, if you find that argument persuasive, I can't convince you otherwise. But that's not entitled to any kind of deference. It's this Court's job to look through the whole record and analyze it from A to Z and make its own determination about whether or not this constitutes suppression. And I think that the State simply, on day one, thought that it had more than enough to testify, and again, that goes to the merits, more than enough testimony that it was going to bring from the officers in this case to address the admissibility question. And it's unfair for the State to be unpenalized for assuming that the judge was going to employ the law correctly and then the judge fails to do so. That happens a lot of times. Absolutely, Your Honor. But then that doesn't make it not amount to a positive or negative substantive suppression. But I guess I would editorialize, again, that if I were a prosecutor and I saw that possibility at the beginning, I think I would have tried to have been creative in doing something. Because altering badge numbers and Social Security numbers, the badge number is explained. The Social Security number, there are people in the penitentiary system that probably have the same name. But they have different Social Security numbers and they may have, they could even have somewhat similar descriptions. Sure, Your Honor. But I think, first of all, the badge number, the Social Security number, is not the only piece of identifying information on this card. And I can reach the merits if the Court so inclined has no questions more about jurisdictional considerations. But on the merits specifically, and I think this goes towards what the Court's concern is, towards what the District Attorney did in this, the State's Attorney did in this case. Because I think this is really a case about best practices versus minimum standards. Cases are constantly brought before this Court where State's Attorneys could have done something a little bit better and presented something a little bit in a better way. And this Court says, well, yes, but the question is whether or not they met the minimum standard of the law. I think in this case, based on the exhibits that were presented and the arguments that were presented, the State met that requirement and presented enough evidence. So on the merits, it's an abuse of discretion for a trial court to employ the wrong legal standard in evaluating evidence. In this case, the trial court erred in denying these two motions, or the motion to omit the two exhibits because they employed the wrong legal standard in evaluating them. Here, it's the State's position that both exhibits were readily identifiable and relatively impervious to change in this case. And even if the Court disagrees with that, the Court employing a full chain of custody analysis in this case is still improper. And enough evidence regarding chain of custody was presented, even if this Court disagrees, regarding the relatively identifiable and relatively impervious to change standard. First, if an item possesses unique and readily identifiable characteristics and is relatively impervious to change, testimony that the item sought to be omitted is the same when recovered and is substantially in the same condition is all that's required for admittance. And that's Peeble v. Echevarria, which is a Supreme Court case. But you admit it's not in the same condition if something's been changed. Yes, Your Honor, but this test is relatively impervious to change. And here the evidence, relevant evidence, is the defendant's fingerprints and the identifying information. Sorry, the fingerprints that are on one side of the card. The identifying information only makes it relatively or readily identifiable because fingerprints by themselves, if we took one of the judge's fingerprints versus the other. No. No, of course not, Your Honor. So State's Exhibit T, which is the fingerprint card, contained a plethora of information including his name, his date of birth, place of birth, sex, race, height, weight, hair color, eye color, skin color, Social Security number, employer address, place of residence address, case number, date of arrest, arresting officer number, the citation that he was charged, whether or not he was unarmed, and the document control number itself. This information is printed at the time that the card's created. It's not added later. Is it correct the card came from, did it come from another facility, another jail, or it came off the system? Your Honor, my understanding is that the card was created at the facility where he was fingerprinted out of the machine that he was created, and then there are alternate copies that are created, hard copies. But the facility where he was originally. Yes. Where did all the information about him, where was that from? His, whatever he told the police officer who took the fingerprints? It's my recollection that Officer Berens recalled that he was given that information orally by the defendant. And I think that kind of goes a little bit toward. Did that include the Social Security number? I don't think he testified specifically to the Social Security number being given. I'm assuming based on him saying that he received that information orally from the defendant, that that was one of the pieces of information that was included. After the Social Security number was changed, did it then match the defendant's Social Security number? That's information I don't believe is in the record. I'm not aware if that's correct or not. You've indicated the State doesn't know who changed the Social Security number, right? Yes, Your Honor. But that wasn't necessarily conveyed to the trial court. No, I believe that was conveyed. I think that was in response to Justice Kennedy's question. So wouldn't that leave the trial court in a position where State acknowledges they don't know who changed the Social Security number, therefore someone had the fingerprint card with information on it, and State doesn't know who that was? Why isn't that a problem for your chain of custody? Your Honor, I think that the last two words you said, the three words, are the important question. It's not a chain of custody issue in the State's first part of the argument. This is relatively identifiable and impervious to change. The only thing that's required is for the person who created, well, the case is used for covered, but that's because it's usually like a bloodstained boot or a gun or something like that. When it's created, that it's in the same condition, relatively the same condition, as when it was created. And that's the testimony that the State elicited from Officer Baranza-Trott. I don't follow what you're saying. We have to know that that's the defendant's fingerprints, don't we? Yes, Your Honor, but the only test... What's the foundation for that? Maybe that's a better question. I'm not asking it. Sure, Your Honor. It's Officer Baranza's testimony, and he said he took the fingerprint card. He took the information down from the defendant. He fingerprinted the defendant. The card was printed out. He took the card from where it was created to the sergeant's desk. The card is in the same... I understand it, but I have to know from the trial court, don't I, whether the fingerprint expert examined the latent prints against the defendant's known fingerprints. Sure, Your Honor. How do I know that if there's a breakdown, and you say it's not a chain of custody, but we know that some person had it, but we don't know who it was. Your Honor, we know that it was... Just that they changed the Social Security number. Well, maybe. For the first part, regarding the matches, there was testimony from the experts that compared the fingerprints at the scene to the fingerprints on the card, so we do have that testimony. It looks to the defendant to the scene of the crime. Say that again. That went over my head. What do you know for sure? Your first question was regarding whether or not the fingerprints were compared to the fingerprints at the scene. There's testimony in the record from the analyst at the crime lab who did that, but that was given on day one, and then there was the issue of... It was compared, but the opinion was excluded, whether they matched, right? No, Your Honor, that wasn't excluded. It was given at trial, but then what happened was that it was provisionally let into the case on day one. The conversation sidebar I let out happens, and then day two comes around, and the judge says, well, at the end of the sidebar, the judge says, I'm provisionally letting this in pending this testimony from the officer. Okay, I think you jumped from the initial testimony from Bodine to the testimony of Moore, but I'll go along with that with you. The state had a chance to go ahead and go to jury and argue, based on the court's ruling, that there had been a comparison and that the expert said that they matched, but the state said, we don't want to do that because you didn't admit the card into evidence. Isn't that right? No, Your Honor. I think that the order of operations of that was that the trial court denied the motion to admit. Then the case said, well, we'd like to have the recess came back and said, well, we'd like to file a notice of appeal and impairment, because they assumed, and this is on the record and they stated, that by necessity, if the exhibit, if the expert testimony that was given comparing the cards to the scene was excluded, or the cards were excluded, I'm sorry, the testimony attached to that couldn't be admitted. So the judge offered that as an avenue, and then the state said, well, if you'll let me do that, then I'll present my case and just go to closing. And then the defense said, no, wait a minute. That's not allowed. Here's my motion for excluding that testimony. And then the judge shut down the hearing. No, then the state agreed with the defendant. Yes, it agreed. Then the court, whatever this means, shut down the hearing. I don't know what that means. It ended the hearing. It said, I'm not ruling on that. I want to go back to this Bodine. Bodine testified in the first day of trial, right? Yes, Your Honor. And Bodine had fingerprints from the Bureau of Identification that were purportedly those of the defendant. Yes, sir. And she made a comparison of those prints from the database that she had access to, to the latent fingerprints. Then she was asked the question, do they match? That's when the defendant objected. Yes. Right? Yes. And the state never went back to that. Your Honor. They never tried to clean up that foundation. They went on to the fact they had taken subsequent fingerprints. Is that right? I might be misunderstanding you. Are you saying that the testimony, and this might just be my misrecollection of the record, regarding the database that's not the fingerprint card to the, the testimony about the database being compared to the fingerprint card, not the fingerprint card being compared to the fingerprints at the scene of the crime? I'm just misunderstanding what the issue is regarding that. Well, maybe I'm misunderstanding. Did you agree that there was a Bodine that testified? Yes, Your Honor.  Yes, Your Honor. And that she had supposedly known prints of the defendant? Yes, Your Honor. Okay. And that she compared those to the latent fingerprints, and then when she was asked, do they match, there was an objection on foundation, sustained, and then the state never tried to complete that foundation. Okay. Or am I wrong? No, I mean, I think I now recall what you're referring to regarding the database being compared to the prints at the scene. Okay. Well, how do you complete that foundation? Well, Your Honor, I'm, because that's not the exhibit that's on appeal, I'm not sure. I have to go back and look at what that is. Well, the reason I asked that, maybe that was another avenue the state would have had, which would get back to some of the questions that Justice Connect asked. Did they have another way to get this into evidence? Wouldn't that be one, would be my question. Your Honor, I see my time has concluded now. Justice Connect let you. Yes, please answer. Just time. I think that the problem with that line of argument is that the state has a right to use what exhibits it wants to, and in the line of, the question about whether or not another avenue would be available to bring in fingerprints from a database that has incredibly different foundational requirements, would require testimony from the database owner, all of that is separate and apart from the testimony and foundation that was established here. On rebuttal, I'll be sure if you have more questions about that. I will, because I think one of the cases cited that starts with a K, I can't remember what the initials are, there was another avenue available there and the appellate court said they should have, or the Supreme Court said the state should have taken it, but you can address it when you get back to rebuttal. Thank you, Your Honor. Thank you, counsel. Ms. Bangman. I am Jessica Bangman with the Office of the State Appellate Defender, and I represent Mr. Ronald Pettis. Justice Turner, I'd like to address your question, perhaps, regarding Enrique E. F., which is the case where the court held that there was jurisdiction,  was not jurisdiction in that case, and that the state had an opportunity to present the evidence, it just chose not to. So in that case, the state wanted to introduce evidence of a recording. The trial court said, state, you're allowed to introduce evidence of the recording as long as you bring this witness into the trial and you ask pertinent questions about that recording. The state said, no, we don't want to do that, we just want to play the recording. The trial court said, no, I'm not letting the recording in. So that's when the state appealed, and the Supreme Court held that there was no jurisdiction because the state missed its opportunity. The state missed its opportunity to present the evidence needed to avoid the necessity of an appeal. So in this case, the state also missed its opportunity because the trial court's order does not have the substantive effect of suppressing evidence. The trial court's order just informs the state the way in which it needs to present its case. Well, the difference is the trial court in our case here didn't say, you've got witness X and witness Y, you can call, do it, and that cleans up the problem. Whereas in KEF, the trial court says the minor has already testified and is available and needs to be put back on the stand. It doesn't even matter what her responses are, as long as you ask her questions. That's a little bit different than what we have here, isn't it? It is a little bit different, but the state is still in control of its case. The state in this case had the opportunity to call the additional witnesses to clear up the foundation. But weren't there any additional witnesses? But we don't know that. And the Supreme Court that found that they were. Well, could I infer that if the state had additional witnesses, they would have put them on? No, Your Honor, because there's no testimony in the record to make that inference. How would you testify that there are additional witnesses that needed to be put on? How did you get that? The state could have moved to continue if it had those additional witnesses. If these witnesses existed or if they didn't exist, I would think that the state would let the trial court know that. Instead of explaining to the trial court where it was coming from, the state just threw up its hands and said, I'm going to appeal this ruling. Well, the trial court basically said, look, you're going to have to tell me how this Social Security number got changed or it's not going to be admissible. The trial court had several issues with the piece of evidence and the Social Security number being one of them. And if the state has no way to inform the court how the Social Security numbers got changed, then what? They just lose? Then, pursuant to Justice Connect's suggestion, the state moves to continue. The state obtains new sample fingerprints from the defendant and provides a new sample match so that the expert can match those fingerprints. Or, as Justice Sherman mentioned before as well, the state could potentially have proven up the APHIS card. I mean, the state was also offering – they didn't make that to prove the evidence because they couldn't show the foundation for the APHIS card. But that's another opportunity that the state could have used. What are the foundational requirements for use of an APHIS card? I'm not sure. Well, the requirements for use of an APHIS card would be – I would think that's not in this case, so I don't know the answer. But I would assume that it would require calling somebody with information regarding how the prints are uploaded into APHIS, how they're maintained in the APHIS, who has access to those prints in APHIS, et cetera. But that I do not know. Here, we're obviously dealing with an arrest card, and the state missed its opportunity. The state just missed its opportunity. The state's right to an interlocutory appeal does not extend to any evidentiary ruling by the trial court. In all of the cases cited, the jurisdiction cases – Truitt, Drumm, KEF – all of those cases involve pre-trial hearings and motions. The jury in this case was sworn. The evidence was being heard. The interlocutory appeal, that's not what this is meant for. KEF was not a pre-trial case. I apologize. It was a mid-trial case. It was during – But that actually helps your argument. I'll leave it there, then. Thank you. What about the court sort of sending the state the misleading message that it was likely going to allow the admission of the exhibits if the foundation was tied up? Because the state said that it would tie up the foundation, so that the trial court was giving deference to a state's attorney that's presumably in front of the trial court multiple times a week, a month. So the trial court was giving the state that opportunity. The trial court was saying, Look, state, I'm giving you this opportunity. You want to recall expert bodine at the end of your trial to tie this up? That's fine with me. That's what the trial court said. And so the trial court ruling saying this will get tied up or saying I'll provisionally allow it until it gets tied up. Well, it obviously wasn't tied up because there were so many issues. And in the docket entry – I'd also like to point out the docket entry because I think that's a very informative piece of information that we have here because the trial court specifically says it writes, The state had not rested at this point and could have requested less drastic relief and chose not to. Yeah, but she wrote that two days later. She wrote that two days later. Yeah, she didn't say that at the trial. But she allowed the state to take a recess. The state was able to take a recess. The state didn't ask to move to continue, Your Honor. If the state – there's no evidence in the record to show that had the state asked to move to continue, that the trial court would have said no. What if the state had already presented enough that the court should have allowed the evidence to go to the jury? It still has to jump through all these hoops even though the trial court's wrong? I just don't understand your question. Could you rephrase? I apologize. The trial court said that the chain of custody was insufficient. The state's position is the trial court was wrong. Correct. And therefore, we just say, Well, even though we think, and this is hypothetically, the trial court was wrong, there's nothing we can do about it. The state put on sufficient foundation evidence. The trial court made an erroneous ruling. Our hands are tied because we don't have jurisdiction to address the court's error. But the court's ruling was not wrong. The court's ruling was not an abuse of discretion. He said it was hypothetical. Hypothetical. But that means that you have to answer it as if the state was wrong. So you're asking me, if you agree with the state that you have jurisdiction, then what happens? No. No, okay. If we agree with the state that she should have left the evidence in. Because that's not the question before us. It is, but you've got to jump through the other hoop first. What then? If we assume that it was correct and that the trial court's ruling was wrong and this court were to reverse and remand or something like that. I'm sorry. In that the state, not using best practices, but the minimum standards of foundation, approved up as foundation. So the fingerprint card was not a readily identifiable piece of evidence. Because it was not readily identifiable, the state had to show a chain of custody. The state has to show a prima facie case that reasonable measures were employed to protect the evidence and that it was unlikely the evidence was altered. The state, in this case, did not show a prima facie case that the evidence was not altered because there were alterations on the card. The social security number was changed. There were initials that were added to the card. There was a miscellaneous number that was edited. And there was a time, I believe, also added to the card. So it's not just... So that's what the trial court means. She makes reference to other notations or things on the card. Yes, and I did try to spell those out as clearly in my brief as I could. But the state has failed to show, make a prima facie case, that its methods were reliable. Because the fingerprint card was altered. So even if the state were to have arguably made a prima facie case that its methods were reliable, but they weren't here because we have that three-month gap. We have the three-month gap where the fingerprint card is in records. We don't know what's happening to the card while it's in records. We don't know if the changes are being made to the card while it's in records or if those changes were made by the shift sergeant. We also don't have testimony from the shift sergeant regarding whether or not he possibly made those changes. Can I interject with regard to the changes? I'm sorry to interrupt, but counsel is making the argument based upon the authority in Petri Area Supreme Court case. Evidence merely has to be in substantially the same condition, not the exact same condition. Further, that the fingerprints themselves on the card was not in any way altered. It's other aspects about the card. My first response is to your point that the state's argument that the fingerprints themselves were not altered. The fingerprint card is a unified piece of evidence. The fingerprints themselves are not a separate piece of evidence from the identifying information on the back. This is akin to a bag of drugs and the tag that identifies what's in the bag of drugs. The identifying information on the back of the side of the fingerprint card is a unified piece of evidence. It's one piece of evidence. Just because there's no proof, and we don't know that the fingerprints weren't altered, we just have evidence that the other information was altered. Because that other information was altered, the state has failed to make a prima facie case that its evidence was reliable, which then requires the state to prove more steps in the chain. Even if the state, for sake of argument, presented a prima facie case that its process was reliable, my client has shown that the card was altered. So because my client has shown that the card was altered, the burden then shifts back to the state to rebut the evidence of those alterations. So that's the opportunity for the state to come back to call these witnesses, or at least tell the judge that it doesn't have witnesses, but we can't rest on a baseless assertion on appeal that these witnesses didn't exist. We don't know that. And that's not what the state's right to appeal is for. The state's right to appeal is when a trial court's order actually has the substantive effect of suppressing that evidence. Here the state just missed its opportunity to prove its case. I have a question that I think relates to that. My understanding is the state asked to proceed if the court would allow it to rely on the testimony from its experts during oral argument, or during closing argument. And the court indicated, yeah, I'll let you go ahead. And then the defense said, made an oral motion to strike any testimony from the state's experts, which in turn would have precluded that argument. And the state then popped up and says, we tend to agree with the defense motion. And that's kind of why we want to appeal. And the court goes, doesn't rule on the motion to strike, but just says, well, if that's what you both think, we're done. Go ahead and file your certificate if that's what you want to do. The court then ended the case, that's correct. Which is the final opportunity for the state to make some type of offer of proof, at the very least. That's correct, Your Honor. Well, also to ask the court to rule on the motion. That's correct as well. Which the court never did. Right. The court did not rule on the motion to strike the testimony from the state's experts. And the state had yet to rest its case. And so the state could have rested its case, could have proceeded, but it chose not to. As the trial court wrote in its docket entry, it could have chosen a less drastic relief, and it chose not to. This is a case about missed opportunity. The state has missed its opportunity to prove its case against my client. And even if this court finds that it does have jurisdiction, the chain of custody in this case was not sufficient. Well, suppose this court, actually I've tried to ask this before. I will try my best to answer, Your Honor. Suppose this court thinks that the trial court was wrong about its ruling on whether the chain was sufficient. But we agree with you on jurisdiction. Then where does that leave us? Does this go back down for anything? Is it double jeopardy? I think those are very valid questions. I hope. That's why I asked them. Do you have an answer? Absolutely. And I think that it's a concern, and I think it highlights why we don't appeal in the middle of a trial. But I think that for realistic, and this is obviously speculation, but I would think that if Your Honors agreed and found that you had jurisdiction and that the trial court abused its discretion in finding that the chain of custody was not sufficient, that then the state would have to, I think, re-empanel the same jury and then bring the evidence. But I'm not sure, and that's an issue that wasn't briefed. I can't say I've ever heard of that. Maybe you're right. I don't know. The case that I found where the court found that there was jurisdiction to address the appeal, they reversed and remanded for further proceedings. I looked into that case to try and see whether or not they were specific about those proceedings, like re-swear the jury or something like that, but they weren't. So I think that that's why this case is unique, is because this happened in the middle of a trial. We had a jury that was sworn, and my client didn't request a mistrial. The court just ended the trial without consent of my client, so he certainly didn't agree to that for double jeopardy purposes. So I think that there would be concern that the state would be unable to possibly prove its case, but I think that this court does not have jurisdiction and that the trial court did not abuse its discretion. And that's where it brings me back to my concern with the court having made what I think is probably an erroneous ruling with regard to the chain, because even though the court was wrong and the state's jury was correct, if we don't have jurisdiction, that mistake stands, because double jeopardy is going to attach, and the state therefore is left with actually no remedy. It missed its opportunity to prove its case against my client in the trial court. Okay. I get your argument. And that happens sometimes. The state didn't do it right, and they lost the case. I do disagree with Your Honor that the trial court abused its discretion, because I think that the trial court applied the correct standard and that all of the alterations, five of the alterations, in addition to all of the gaps in the chain, show that the- We're pretty sure that you- Disagree with it. Disagree with it. Otherwise I wouldn't be here. That means you've been a jealous advocate, so that's a common thing. If Your Honors have no further questions- Your client, when fingerprinted, was already in custody on another charge? Yes, I believe he was in custody on another charge when he was- That is an answer. What? I don't know if he was in custody on another charge when he was fingerprinted. I do not know. I noticed in reading the transcripts, some of the transcripts, that before the case proceeded, the trial court asked if any plea offers had been made. Is that right? Or am I getting this mixed up? I don't recall. You don't recall that? I don't recall, no. But it doesn't mean that it didn't happen once. I apologize. Okay. I don't have any other questions. Thank you, counsel. No further questions. We ask that you affirm. Thank you. Counsel? Counsel? I think I want you to address first that point I made about the defense moved to strike the testimony of the expert witnesses, which essentially objected to the court allowing the state to make reference to that closing argument. And then the state pops up and agrees with the defense, so there's no ruling on that motion to strike, and the trial court throws up her hands. How do you proceed to do anything without a ruling on that motion to strike? Because if you insist that, if you argue that, insist that the trial court let you do that, and you prevail on that motion, we're not here. Your Honor, I don't think that that's actually the way that the – The way it happened. I think that if you reread the record, my recollection is that the state, and the tentativeness comes off the page, kind of said, well, if the court's going to let me do that, then fine, I'll go ahead and just say that these experts analyzed the fingerprints without the exhibits being in evidence, and then agreed that on the law that wouldn't be allowed. As a state's attorney, I mean, I wouldn't have necessarily gone about that way. Right. But the trial court was the one that offered that as an avenue, and then when the state agreed, and as it does in its briefs before this court, agreed that that was not a tenable solution. But you didn't agree to that. They didn't. Trial counsel didn't agree to that until the defense objected? Yes, Your Honor. And I think that the court should have then said, okay, well, then I'm striking the testimony. But as of now, there's a pending motion on the docket because the trial court decided that it wasn't going to rule on it for reasons that I don't understand and I think this court has questions about. But I don't think that affects the procedural posture before this court, because the court can review the whole record on its face and simply move on that case. To address Justice Turner's question that you asked me to address when I came back up here, Exhibit T, the fingerprint card, and the APHIS card are two separate pieces of evidence. So there's different sets of foundational requirements that are necessary to have people testify to that evidence. So I think for this court's analysis and when this court reviews it on the law, the only question the court can ask is whether or not there was enough evidence given for this particular piece of evidence, not fingerprint evidence in general. Because, again, different pieces of evidence have different foundational requirements. But fingerprints evidence in general, there may be an APHIS card for this defendant. Right, Your Honor. But the question before this court is, was fingerprint evidence excluded? The question is whether or not Exhibits T and S were excluded. But what I'm saying is, does that get us back to the less drastic remedy of the trial court saying, I don't think that's relevant to the question of the admissibility of the card itself or its procedural posture here. I think that if the State had an avenue to bring Exhibit T, then yes, then we wouldn't have jurisdiction. But if there's no witnesses to fix Exhibit T, the APHIS card, regardless, might have other issues with it. But it may not. It may not. But there's no information on the record about that. That's what I'm not making myself clear. Could the State have secured an APHIS card promptly? I'm not aware. We don't know. I'm not aware. But I don't think that's relevant for the Court's analysis about whether or not the State has the ability to bring an appeal before this Court on Exhibit T, because the question is Exhibit T and S, not fingerprint evidence in general. And I'd also like to note that the Court has asked no questions about Exhibit S, and the trial court didn't ask any questions about Exhibit S, and just assumed that that was also needed to be suppressed for reasons that also weren't addressed by the trial court in any substantive way. I'd like to reiterate that all of this goes to weight and not admissibility. I would have provided this before, but there are cases about fingerprint cards without any alterations that are commonly accepted as readily identifiable. That's people who rose in the 5th District. I can give the citation if that's relevant. It wasn't cited in the brief simply because those courts... It's relevant for the question of whether or not it goes to chain of custody or whether or not it's readily identifiable. We can go down that analysis road. Fingerprint cards are readily identifiable. Typically, it's readily identifiable. Right. The only thing that would make it not readily identifiable or not more than any other fingerprint card is its alterations. There isn't any suggestion that it's not a real fingerprint card. Right. It is the question about the alteration. And it's the State's position that it's settled law in Illinois that fingerprint cards in general with no alterations are readily identifiable. So just on that point, I'd like to point that out. Lastly, the appellate counsel has made some great arguments that could be made in front of the trier of fact regarding whether or not what happened in these three months or two months, I believe it was. But, again, those things go to weight, not on civility. And the trier of fact is the jury in this case, not the judge. And the judge doesn't have the right to override her concerns about the reliability onto the rules of evidence in Illinois. And I think that's what the judge did. And I think that this Court should rectify that by exercising this jurisdiction. One last point on the readily identifiable for Woods. You can finish. On Woods, the word is not alteration or correction when it comes to evidence that is being addressed. The question is tampering, contamination, or exchange. And that's not present in this case because the fingerprints weren't affected in any way, and there's no evidence in the record that shows that at all in any way, shape, or form other than conjecture. So with that, we'd ask you to reverse. I would like to say that we've had other arguments today that were not as engaging or lively or where counsel actually attempted to answer our questions. I think you both did an excellent job, and it made it an enjoyable case to end the day.